**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| POSITIVE TECHNOLOGIES, INC. § | |
| § | |
| *Plaintiff,* § | |
| § CIVIL NO. 2:07 CV 67 | |
| v. § | |
| § | |
| LG DISPLAY CO., LTD., ET. AL. § | |
| § | |
| *Defendants.* § | |
| § | |
| § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant LG Display Co.'s ("LG") Motion to Dismiss for Plaintiff Positive Technologies, Inc.'s ("Positive") lack of standing (Dkt. No. 346).[1] The court has carefully considered the motion and related briefing and DENIES the Motion for the following reasons.

**I.    Background**

Positive-California originally filed this suit on January 5, 2007, claiming that LG infringes United States Patent Nos. 5,280,280 ("the '280 patent"), 5,444,457 ("the '457 patent"), and 5,627,558 ("the '588 patent") (collectively "the patents"). *See* Original Complaint, Case No. 2:06-CV-022. After the original complaint was filed, LG objected to Positive-California's standing. As a result, that case was dismissed and Positive-Nevada filed the present case. On March 19, 2007, Positive Nevada and Positive-California merged into "Positive Technologies," a Nevada corporation which is the surviving entity and successor in interest. During discovery in this case, LG discovered

---

[1] The defendant also moved the court to compel certain documents it thought were relevant to the standing issue. The defendant argued the plaintiff was withholding the documents by improperly asserting privilege. (Dkt. No. 365). The court denied the defendant's motion to compel after an *in camera* review of the documents (Dkt. No. 459). The court determined the documents were not relevant; therefore, the court never reached the privilege issue.

that ownership interests in the patents had been intertwined with previous California State Court litigation between the inventor and his former attorney, Jeffery Schwartz ("Schwartz") ("the California action"). In June of 2003, Schwartz and the inventor entered into a fee agreement for legal services. As a part of that agreement Schwartz received twenty-five percent of the patents. Attached to the fee agreement was an assignment of rights in the patents. For reasons beyond the scope of this suit, a dispute regarding Schwartz's professional conduct and the fee agreement arose resulting in the California action being filed. The parties to that action settled. As a result of that settlement, on June 21, 2007, Schwartz reassigned any right, title or interested he may have obtained by virtue of the Fee Agreement to Positive *effective* as of June 11, 2003–the original date of the contract ("the reassignment"). In the reassignment, however, Schwartz retained a right to enforce the earlier fee agreement. The defendant then filed this motion to dismiss arguing that the plaintiff did not have the requisite standing to bring this action because the reassignment followed the filing of this suit.

## II.   Statement of the Law

For purely procedural issues in patent cases, such as dismissal of a complaint for lack of subject matter jurisdiction, law of the regional circuit applies. *Toxgon Corp. v. BNFL, Inc.,* 312 F.3d 1379, 1380 (Fed.Cir. 2002). Where, as here, there is a standing issue not intertwined with the merits of a claim, the Fifth Circuit prescribes that the issue be raised in a motion to dismiss for lack of subject matter jurisdiction, rather than in a motion for summary judgment. *See, e.g. Barrett Comp. Servs. Inc. v. PDA, Inc.*, 884 F.2d 214, 219-20 (5th Cir. 1989). The party asserting jurisdiction has the burden of establishing jurisdiction. *Kokkenen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377 (1994). If a party does not have standing, rendering the federal court without subject matter

jurisdiction, the court must dismiss the action. *Aetna Cas. & Sur. Co., v. Hillman,* 796 F.2d 770, 774 (5th Cir. 1986).

Whether a party has constitutional standing to "assert the jurisdiction of a federal court is a question of federal law, and 'standing is to be determined as of the commencement of suit." *Paradise Creations, Inc. V. UV Sales, Inc.*, 315 F.3d 1304 (Fed.Cir. 2003) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). "In addition to the ... standing test delineated in *Lujan*, standing doctrine embraces judicially self-imposed limits, known as prudential limits, on the exercise of Jurisdiction." *Intellectual Property Dev. v. TCI Cablevision of Ca., Inc.*, 248 F.3d 1333, 48 (Fed. Cir. 2001) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984). For prudential standing, it is well settled in the context of patent litigation that all co-owners of a patent must join in a patent infringement action. *Isreal Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1264-65 (Fed.Cir. 2007). "Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack standing." *Id.* at 1289.

**III. Discussion**

The defendant does not argue that Positive lacks constitutional standing. The defendant only argues that Positive lacked prudential standing when it brought this suit. The defendant posits several arguments why Positive lacks standing. First, when the suit was filed Mr. Schwartz owned twenty-five percent of the patent, but was never joined as a party. The defendant argues that the reassignment signed in June 2007 could not remedy the standing defect. Second, the defendant argues that even if the court finds that the standing defect could be remedied post-filing, the reassignment was ineffective. The defendant reasons Schwartz owned twenty-five percent of the

patents during the relevant infringement period, and the reassignment did not expressly grant Positive the right to sue for past damages. Third, the defendant argues the reassignment was not clear as to whom the rights were assigned, because the reassignment was to "Positive," and did not specify Positive-California or Positive-Nevada. Finally, the defendant argues the reassignment was illusory because the reassignment recited that Schwartz did not give up his right to "attorney's fees . . . pursuant to the June 11, 2003 Fee Agreement or any other agreement." The court will address each argument.

The plaintiff argues that the prudential standing defect at the commencement of the lawsuit could not be remedied by a *nunc pro tunc* assignment of the patent rights. The plaintiff cites *Enzo APA & Son, Inc. v. Geapag*, 134 F.3d 1090, 1093,94 (Fed.Cir. 1998) and *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779-80 (Fed.Cir.), *as amended* 104 F.3d 1296 (Fed.Cir. 1996) for the proposition that "[s]uch an archetypal example of a *nunc pro tunc* assignment is ineffective in removing Positive's standing defect." (Dfts. opening mtn. 16). Those cases, however, do not speak to the type of standing defect that existed at the commencement of this suit.

In *Enzo*, the plaintiff had no rights to the patent when it originally brought suit. *Enzo*, 134 F.3d at 1090-91. The court recognized that "[a]s a general matter, parties should possess rights before seeking to have them vindicated in court." *Id*. at 1093. The *Enzo* Court does not distinguish between constitutional and prudential standing. Similarly, in *Gaia*, the court refused to allow a retroactive assignment to the plaintiff after the suit was filed. As in *Enzo,* after reviewing the patent's chain of title, the *Gaia* Court found that the plaintiff had *no rights* in the patent at the time of filing. In sum, the parties in *Enzo* and *Gaia* had neither constitutional nor prudential standing to bring their respective suits because they had *no rights* in the patents at the time of filing. Positive,

however, did have rights when it brought this suit–Positive owned seventy-five percent of the patents. This significant ownership vested Positive with constitutional standing. *See Morrow v. Microsoft, Corp.,* 499 F.3d 1332, 1338-39 (Fed.Cir. 2007) (differentiating constitutional and prudential standing in that "[t]o demonstrate the minimal constitutional standing requirements have been satisfied, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'")

The Federal Circuit has not found that prudential standing cannot be remedied when, as here, a plaintiff has constitutional standing at the commencement of a suit. In fact, the Federal Circuit has recognized on many occasions the ability to cure prudential standing defects post filing. *See, e.g., Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1133–34 (Fed. Cir. 1995) (allowing post-filing intervention by patent owner, whose joinder was required for statutory, i.e., prudential, standing); *Intellectual Property Development,* 248 F.3d at 1348 (recognizing the principle that a patent owner may be joined by an exclusive licensee where exclusive licensee has "constitutional" standing at the time of filing).

Next, the defendant urges that even if the court finds that this type of standing defect can be cured post-filing, the reassignment was ineffective to cure the defect in this case. The defendant argues that Positive does not have the right to sue for damages during the relevant infringement period because the assignment did not expressly give it the right to sue for past damages. The defendant correctly asserts that "[t]he authorities are uniform that [a right to sue for past infringement] must be express, and cannot be inferred from the assignment of the patent itself." *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d at 1579 n. 7 (Fed.Cir. 1991). In this case, however, there was no need for Schwartz to include such an express grant. The reassignment was effective

5

as of June 11, 2003. The original assignment to Schwartz was on June 11, 2003. Essentially, there is no gap in Positive's complete ownership interest in the patents–it owned 100 percent of the patents at all relevant times.

The defendant further argues the reassignment was ambiguous because the grant "to Positive" did not specify Positive-California or Positive-Nevada. While the grant was effective as to a date when both entities existed, it was executed on the date when only one Positive existed. It is clear that the intended grantee was the only entity that existed at that time.

Finally, the defendant argues the reassignment was illusory because the reassignment recited that Schwartz did not give up his right to "attorney's fees . . . pursuant to the June 11, 2003 Fee Agreement or any other agreement." This reservation of rights does not divest Positive of standing. While Schwartz may have reserved his right to legal fees under the assignment, which was linked to the patents at one time, he did not retain any rights in the patents after the reassignment. At most, Schwartz retained an equity interest in the patents under the terms of the reassignment. One party's equitable interest in a patent, however, does not divest the legal title holder of standing to sue for infringement. *See Arachnid,* 939 F.2d at 1580.

In sum, there is no contention between the parties that Positive has at all times had constitutional standing to bring this suit. Under the facts of this case, Positive was able to cure any prudential standing defect post-filing by way of the reassignment. The reassignment closed the gap in Positive's legal title to 100 percent ownership in the patents-in-suit. Any rights that Schwartz retained did not make the reassignment illusory. At most, Schwartz retained an equity interest in the patents under the reassignment, which does not divest Positive of standing.

## IV. CONCLUSION

For the reasons stated above, the court concludes that Positive has standing, and has lawfully corrected any standing defects it may have had at the commencement of this action. The court therefore DENIES the defendant's Motion.

SIGNED this 24th day of September, 2008.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE